## Pascal and Paul Farina v. Commonwealth.

(Decided November 24, 1925.)

### Appeal from Jefferson Circuit Court (Criminal Division).

1. Criminal Law—Any Conduct of Defendants Inconsistent with Their Innocence or Tending to Establish Guilt Admissible in Evidence.—Upon trial of criminal prosecution, any conduct of defendants inconsistent with their innocence or that tends to establish that they were guilty is admissible in evidence.

2. Criminal Law—Admission of Evidence that Defendants Resisted Requisition Held Error and Prejudicial.—In bank robbery prosecution, evidence that defendants resisted requisition, and tried at hearing before Governor and by legal action in federal court to prevent being returned for trial, was incompetent and its admission was prejudicial error.

3. Witnesses—Admitting Evidence of Witness Being in Bootlegging Business for Purpose of Impeachment Held Erroneous.—In view of Civil Code of Practice, section 597, prohibiting impeaching witness by evidence of particular wrongful act, it was misconduct for Commonwealth's attorney, in cross-examining a defendant in bank robbery prosecution, to ask defendant if he had not been arrested by a detective on a certain date, and whether he had

not told the detective that he, defendant, was in the bootlegging business.

4. Criminal Law—Use of Photographs of Defendants for Purpose of Identification Held Improper.—In bank robbery prosecution, identifying defendants by means of photographs of defendants, as members of crowd that robbed bank, held improper, as defendants were present in person, and photographs were incompetent as secondary evidence.

5. Criminal Law—Testimony by President of Bank Robbed That Person had Inquired About Opening Pay Roll Account, but Not Identifying Either of Defendants, Hold Incompetent, Not Proper Rebuttal, and Prejudicial.—In bank robbery prosecution, evidence in rebuttal by president of bank which was robbed that person had inquired of his bank before robbery as to whether bank could handle large pay roll for tire company, without identifying either of defendants as that person, held improper as rebuttal testimony, and incompetent and prejudicial against defendants.

6. Criminal •Law—Statements of Prosecuting Attorney Held Improper in Bank Robbery Prosecution.—In bank robbery prosecution, statements of attorney for Commonwealth reflecting upon garage owners held improper, where defense of one of defendants was alibi to be established by garage owner.

7. Criminal Law—Argument of State's Attorney that Accused Talked Like Yeggmen Held Improper.—In argument by prosecuting attorney in bank robbery prosecution, statement that defendants talked ilke yeggmen held improper; the record showing they used ordinary language, although possibly with Italian accent.

8. Criminal Law—Witnesses—Permitting Proof in Attempt to Impeach Character of Witness for Defendants that he was Formerly Interested in Roadhouse of Bad Reputation Held Improper.—In bank robbery prosecution, permitting, in attempt to impeach character of witness for accused, hearsay evidence that he was formerly interested with brother in roadhouse, and also evidence that reputation of place was bad, held improper.

9. Criminal Law—Where Errors Occurring Upon Trial were Prejudicial to Substantial Rights of Defendants, Judgment of Conviction Must be Reversed.—Under Criminal Code of Practire, section 340, where, after considering whole case, it was found that errors occurring upon trial were prejudicial to substantial rights of defendants, held judgment of conviction must be reversed.

BRENT OVERSTREET for appellants.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE— Reversing.

Appellants, Pascal Farina and Paul Farina, prosecute this appeal from a judgment of the Jefferson circuit

court, criminal division, sentencing them to eight years' confinement in the state penitentiary, under the verdict of a jury that tried them for bank robbery.

The questions presented by the appeal make it unnecessary to set forth a detailed account of the testimony produced upon the trial hereof against and for appellants, and only so much thereof as is necessary in considering the various questions presented will be discussed.

It is insisted for appellants that the trial court erred in admitting evidence that appellants at a hearing before the Governor of Missouri sought to prevent their being returned to Kentucky under requisition. It appears from the record that the trial court, over his objection, required appellant, Paul Farina, while being cross-examined, to answer that he resisted requisition and tried both at a hearing before the Governor and by legal action in the federal court to prevent his being returned to Kentucky for trial. Upon the trial of a criminal prosecution any conduct of the accused inconsistent with his innocence or that tends to establish that he is guilty is admissible in evidence. In view of that general principle, courts uniformly have held that flight of the accused may be proved in evidence against him as being inconsistent with innocence and tending to establish guilt. With equal uniformity courts for the same reason have permitted the introduction of evidence that accused resisted arrest. But is not the question here presented entirely different from those mentioned? It certainly will be conceded that every person charged with crime involving his extradition from one state to another has the legal right, upon his hearing had before the Governor—if the Governor will listen—to furnish evidence to the Governor that would authorize him to decline to honor the requisition. The court is unable to comprehend how the taking of any step that one accused of crime may legally take at any stage of the proceeuings by any legal procedure to free himself of the charge or prevent his trial upon the charge may be held to be inconsistent with his innocence and evidence of his guilt. One unlawfully detained may resort to the writ of *habeas corpus* for his release. Evidence that he did so would not be inconsistent with his innocence or tend to prove him guilty of the crime charged. That a defendant presented his defense to an examining court and sought to be released would certainly not be evidence of his guilt of the crime charged or inconsistent with his innocence, and that fact certainly could not be introduced in evidence

against him. We can not see that there is any difference or distinction between those cases and this. It was within the discretion of the Governor of Missouri whether under the requisition he would surrender appellants to the officers from Kentucky to be carried to Louisville for trial or whether he would decline to do so, and he had the right to investigate the charge against appellants and they the right with his permission to present their evidence .that they were not in Louisville but were in St. Louis the day the crime for which they were sought to be extradited was committed, and their doing so was not inconsistent with their innocence and did not tend in the least to establish their guilt of the crime charged. We, therefore, conclude that the evidence complained of was incompetent and that the court erroneously permitted its introduction. We can not escape the conclusion that it was prejudicial. The effect of the admission of that testimony was to tell the jury that the Governor of Missouri had tried the case and found appellants guilty. Its introduction had the same effect exactly as would have been produced in the minds of the jury if, upon their trial, the court had permitted evidence that upon their examining trial, the presiding judge believed them guilty and held them to the grand jury, or upon the trial of a *habeas corpus* the trial magistrate believed them guilty and declined to release them. Its prejudicial effect can not be doubted or questioned.

Appellant, Paul Farina, introduced John Huber as a witness to establish that on April 3, 1925, the date appellants are charged with having robbed the Portland Bank in Louisville, witness and appellant were together in St. Louis, Missouri. While that witness was being cross-examined by the attorney for the Commonwealth, the record shows the following to have occurred:

"Q. I will ask you if it is not a fact that on September 2, 1917, at Tenth and Locust street, in the city of St. Louis, if you were not arrested with Lawrence Dougherty?

"Mr. Overstreet: I will object.

"Q. And Tommie Anmich on a charge of grand larceny?

"Mr. Overstreet: I will object to that and ask that the jury be discharged.

"The Court: I think he may ask if he was arrested with Lawrence Dougherty at that place.

"Mr. Overstreet: I want to make my objection and ask that the jury be discharged.

"Motion overruled, to which defendants except."

Section 597 of our Code of Practice provides that a witness may be impeached by evidence that his general reputation for untruthfulness and immorality renders him unworthy of belief, but not by evidence of a particular wrongful act, except that it may be shown that he has been convicted of a felony. Any evasion of the provisions of that section of the Code has uniformly been frowned upon by this court, especially efforts to impeach a witness by evidence of particular wrongful acts. Scores of cases could be cited holding improper and erroneous any evasion of that provision of our Code of Practice. In flagrant violation of the provisions of that section of the Code, the attorney for the Commonwealth, in cross-examining appellant, Pascal Farina, asked him this question: "Isn't it a fact that you were arrested by detestive Cliffe in February, 1925?" and this: "Did you tell detective Cliffe, in the city of Louisville, in February, 1925, that you were in the bootlegging business?" The trial court sustained objections to each of those questions and admonished the jury not to consider them for any purpose. This court has frequently under similar circumstances reversed cases for similar misconduct.

Upon the trial of the case the attorneys for the Commonwealth had in their possession photographs of appellants, and, while they were never introduced in evidence and submitted to the jury for examination, several witnesses, over appellants' objection, were shown the photographs and by them identified appellants as being two members of the crowd that robbed the Portland Bank. The appellants were present in person. There was no occasion for the use of the photographs for purposes of identification. At most the photographs were but secondary evidence as to the appearance of appellants, and their examination by the witnesses and the testimony of the witnesses from them was incompetent and should have been excluded by the trial court.

While introducing testimony in rebuttal, over appellants' objection, the Commonwealth was permitted to prove by E. M. Swayne, president of the bank that had been robbed, that in the latter part of February or first of March, preceding the date of the robbery, a man came

to his bank who said he was an officer of the Bartling Tire Company, and talked with him about opening a payroll account, and, among other things, inquired to know whether if such an account should be opened the bank would be in position to handle a large payroll without previous notice as to the amount that would be required. The bank president did not identify that man as being either of the appellants, and, in fact, did not identify him at all. The only testimony that he came from the Bartling Tire Company was the bank president's statement that he said so while talking to him. Neither of the appellants nor any of their co-defendants were shown to have had any connection with the Bartling Tire Company, except that one of the appellants testified that in January, 1925, he came to Louisville to purchase a lot of casings and tires from that company and spent some three or four days in negotiations to that end, but discovered that the promoters of the company were crooks and left without dealing with them. In the first place, the evidence objected to and now complained of was in no sense of the word rebuttal testimony. In the second place it was wholly incompetent against appellants, because they were in no way connected with the Bartling Tire Company or with whoever it was that had the conversation with the president of the Portland Bank so as to make them or either of them responsible or answerable for what was said in that conversation. That it was prejudicial cannot be questioned in view of the circumstances.

Misconduct upon the part of the attorney for the Commonwealth, both in the opening statement and in the argument to the jury, is complained of. In his opening statement the attorney for the Commonwealth used this language: ''In the present age of criminals, with bootleggers and the vast amount of stealing automobiles; crooked garage owners and garage proprietors, who are connected with defendants of this kind.'' Objection was then interposed, and the prosecuting attorney, before the court had passed upon it, continued: ''I have no doubt that these men who have plenty of money;'' whereupon the objection was renewed and other statements followed which doubtless will not be repeated upon another trial. One of the appellants established an *alibi* by proving by the agents for the Paige and Jewett automobiles and by the proprietor of a garage operated in the same building in which that automobile

agency was housed, that Paul Farina purchased a Jewett car from them on April 3, 1925, the transaction covering some three hours of the afternoon of that day. That automobile agency was located in a suburb of St. Louis. The fact that his *alibi* would be so established was known beforehand to the Commonwealth. The reference to the automobile stealing and crooked garage owners and proprietors was doubtless injected into the Commonwealth's statement to the jury for the purpose of thus improperly discrediting in advance the witnesses by whom appellant would prove his defense. That statement was improper. In his argument to the jury the attorney for the Commonwealth made the statement: "These men talked like yeggmen. You could hardly understand them." Our reading of the testimony of the appellants discloses that they used common, ordinary, every-day language to express themselves. They appear to be of Italian extraction, and the reference made by the attorney to the fact that he could hardly understand them doubtless was because of the Italian accent noticeable as they spoke. He could not have had reference to the words chosen by them with which to express themselves, because the record discloses that they in testifying used words to express themselves commonly used by all of us in so doing. We think it improper for the attorney for the Commonwealth to have argued to the jury that the peculiarity of their speech, due to their racial ancestry, was evidence that they were yeggmen.

Leo Phayer was one of the proprietors of the agency for the Paige and Jewett automobiles who testified that Paul Farina purchased a Jewett car from them on April 3, 1925. The trial court erroneously permitted proof in an attempt by the Commonwealth to impeach the character of that witness that he formerly was interested with a brother of his in a roadhouse or resort known as "Eagle Park," and that the reputation of that place was bad. The evidence that the witness owned an interest in that resort was mere hearsay. Evidence of the reputation of that resort was incompetent in any event.

Appellants were tried herein for a serious offense. Sufficient evidence to submit the question of their guilt or innnocence to the jury is found in the record. They produced evidence from the mouths of many witnesses which, if believed, would result in their acquittal, because it discloses that they were in St. Louis, Missouri, rather

than in Louisville, Kentucky, on the day the Portland Bank was robbed. Some of the witnesses by whom they produced, that evidence were discredited in a proper way, others in an improper way, and others not at all. When we consider the whole case, we can not escape the conviction that the errors herein indicated, occurring upon the trial, were prejudicial to the substantial rights of the defendants, and, therefore, under the provisions of section 340 of our Criminal Code, the judgment of conviction must be reversed.

Wherefore, the judgment is reversed and this cause remanded, with direction that appellants be granted a new trial and for other proceedings consistent herewith.