### Farina v. Commonwealth.

(Decided September 27, 1927.)

Appeal from Jefferson Circuit Court
(Criminal Division).

1. Criminal Law.—Portion of prosecuting attorney's statement of the case to the jury, which stated that commonwealth would prove that character of defendants was very bad in certain place, held not prejudicial, where evidence of bad character was thereafter properly admitted as bearing on defendants' credibility.

2. Criminal Law.—It will not be presumed on appeal that jury disregarded trial court's instruction not to consider certain statements of attorneys.

3. Criminal Law.—Statement of prosecuting attorney that defendants' counsel might ask state's witness whether or not he had been arrested and how many times, and whether or not he had been indicted, if defendants' counsel would permit prosecutor to ask defendants how many times they had been indicted and arrested in a certain city, held not prejudicial, under Criminal

Code of Practice, sec. 340, in view of uncontradicted evidence that defendants had bad character in that city.

4. Criminal Law.—In a criminal case, the credibility of the witnesses is a matter of law for the jury to determine.

5. Criminal Law.—Court of Appeals can set aside verdict finding defendant guilty of felony if it is palpably against the evidence, but it will not do so otherwise, in view of constitutional guaranty of jury trial.

6. Criminal Law.—In a prosecution for robbing a bank, evidence held to sustain conviction of defendants as against defense of alibi.

7. Witnesses.—In prosecution for robbery, where commonwealth's witness testified that he saw defendants and companion at certain point on road leading from place of robbery, and defendants thereafter introduced witness who had been absent during the giving of this testimony, and who had pleaded guilty of robbery involved, and who testified that defendants were not with him at place of robbery, and that he was never at the place where defendants were seen on the road, the commonwealth's witness might be recalled to identify defendants' witness as defendants' companion whom he had seen on the road.

8. Criminal Law.—Questions asked hotel clerk as to facts shown by hotel register held not prejudicial, where the register was introduced in evidence and the facts could have been considered by the jury if the witness had not been questioned about them.

9. Criminal Law.—In a prosecution for bank robbery where defense was alibi, commonwealth's argument that witnesses for defendants had been coached held not unwarranted by the evidence.

BRENT OVERSTREET for appellants.

FRANK E. DAUGHERTY, Attorney General, and MOORMAN DITTO, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

On the first trial of this case appellants were found guilty and their punishment fixed at 8 years' imprisonment. On appeal, the judgment was reversed and a new trial granted for errors occurring on the trial. Farina v. Commonwealth, 212 Ky. 303, 278 S. W. 1097. On the return of the case to the circuit court it was tried again, and the jury failed to agree. On the third trial of the case the jury returned a verdict finding the defendants guilty and fixing their punishment at 5 years' imprisonment. They appeal.

The Portland Bank is on the corner of Twenty-Sixth street and Portland avenue, in Louisville, Ky. On the morning of April 3, 1925, four men, driving a car, stopped at the entrance of the bank on Twenty-Sixth street, entered the bank armed, and robbed the bank. Later a man appeared at the post office desiring to send a package to Mrs. L. Mathews at a certain address in St. Louis. The officer asked him what the package contained. He said "dirty shirts." The package was so heavy that the officer's suspicions were aroused, and a detective was sent to St. Louis. They found that the person named as Mrs. L. Mathews was Mrs. Lawrence Daugherty. She claimed the package. Thereupon the officers opened it and found in it a quantity of gold coin, which was identified by the officers of the bank as part of the money stolen from it. While the officers were there Lawrence Daugherty drove up in a car, but seeing what was going on escaped. The officers in St. Louis then sent to Louisville the pictures of Lawrence Daugherty, his brother Chester Daugherty, Paul Farina, and his brother, Pascal Farina. The Louisville police identified these as the men who had robbed the bank and requisitions were made for their arrest. Paul and Pascal Farina were arrested on April 8th, and put in custody. Some time later Lawrence Daugherty was arrested at the place to which he had fled. Chester Daugherty was not found. Lawrence Daugherty, on being returned to Louisville, pleaded guilty and was sent to the penitentiary.

The proof for the commonwealth as to the identity of the men who committed the robbery is as follows:

Fred L. Klingman, the cashier of the bank, says he was standing at the teller's cage; that three men rushed in the bank armed, one of whom he identified as Chester Daugherty, came to the cage and ordered him to throw his hands up. At this time another man, whom he identified as Lawrence Daugherty, climbed over the door of the cage and gathered up the money in the bank, getting about $3,700. A third man, whom he did not identify, went into the back room where the president was.

E. M. Swain, the president of the bank, was sitting at his table writing when the armed man rushed in with his face distorted, jumping about with his pistol leveled on him, and ordered him to throw up his hands. This man then went into the front of the bank; two shots were

fired in there, one of which struck the cashier. Swain says:

> "I have never been absolutely positive about it, but that man (pointing to Pascal Farina) is the man."

On cross-examination, he also makes this statement:

> "Q. You are not able positively to identify any one in connection with the whole bank robbery, are you? A. No, sir.
>
> "Q. The only thing you say is that one of the men looked similar to Pascal Farina? A. Yes, sir.

He also further says this:

> "As well as I remember, he had a dark blue suit on and a light hat."

Fred H. Locker, who was in business across the street opposite the bank, heard the pistol shots over there and ran across the street. When he reached the curbing, a man standing in the door of the bank held him up with a pistol drawn on him. This man he identified as Chester Daugherty; another man was standing in the door, whom he identified as Paul Farina; a third man came out with the money in a cloth. He identified Paul by his having a large nose which curved out, but said that he was not positive, said, "It looks like him."

Geibel Stone was in the store with Locker and followed him across the street a few feet behind him. He identified Paul Farina as the man standing in the bank doorway. He said another man held up Locker, but he did not identify him. He was positive as to Paul Farina. Said he had on a blue suit and a light hat or cap, but no overcoat.

C. Swartzwalder was in the bank at a desk making out a deposit slip. When he went to the cage with it, Chester Daugherty held him up. Paul Farina was standing in the door when Locker came up. He was positive as to his identity, but did not notice his clothing.

Fred Fisher was on the opposite side of the street from the bank delivering meat. He heard a shot and started to crank his machine to go away. Just then he heard another shot and stood there and watched. He saw a man come out of the bank with a pistol and jump in a machine. This man was "the heavy set man over there,"

pointing to Pascal Farina, "I am positive." He was across the street from the man and looking diagonally at him. He did not have on a dark blue suit and a light grey hat.

R. C. Haley was driving a car up Twenty-Sixth street and stopped when he reached Portland avenue, making a boulevard stop. When he stopped he saw a man standing at the bank door, whom he thought was a friend of his, and he was about to wave at him when the man turned around, and he saw it was not his friend. The man looked around at him, and he then went on with his car. He noticed a car standing at the bank door headed south. There were three or four men sitting in the car facing one another. They had their heads down. After he passed over Portland Avenue, this car passed him going as fast as it could turn a wheel, and he then saw the same man looking out at the back of the car that he had seen standing in the door of the bank, and identified this man as Paul Farina. The curtains of the car were down and he saw the man's face as he passed him htrough the glass at the back. He says:

"I saw enough of his face so that I thought it was the same man that was in the bank, and to the best of my knowledge it was Paul Farina."

He said he had on a light overcoat and a light hat.

Clarence Wolpert kept an eating house near the Stockyards Bank, in the eastern part of the City of Louisville. He testified that on April 2d, four men came into his eating place and bought sandwiches and went into the dining room and ate them. Each had grips like solicitors carry. He did not notice their clothes; that they looked like foreigners. After they ate, they went out and stood on the corner of the street near the bank. He had occasion to go to the bank to get some change, and as he came back passed the corner on which two of these men were standing. He then looked at them again and identified these two men as Paul Farina and Chester Daugherty, but he did not identify the other two men as they were on the opposite corner and he did not pass near them.

John Miles kept an eating stand at Irvington, which is on the road leading from Louisville to Henderson and in the direction of St. Louis. Four men in a car stopped at his house Sunday morning, April 5th, about 7:30 o'clock. They ordered breakfast. He prepared it for

them; they ate their breakfast and stayed there for 30 or 40 minutes. He talked with them while they were eating and identified all four of the men positively as Lawrence Daugherty, Chester Daugherty, Paul Farina, and Pascal Farina. Among other things, he said to Paul that he was enough like Pascal to be his brother, and Paul said they were twins. They called Lawrence Daugherty "Doctor."

On the other hand, both the defendants testified that they were not in Louisville, but in St. Louis, and did not know Lawrence or Chester Daugherty. Paul Farina testified that on April 2d, he registered at the St. Francis Hotel in St. Louis under the name of E. S. Lang; that he got up at 9:30 a. m. on April 3d, when Leo Fehr called him by telephone to tell him that his proposition to buy a car was accepted. He had seen Fehr on Tuesday, and Fehr called him by phone to close the deal. He told him to be at his office at Granite City at 2 p. m.; that he then got a cup of coffee, went to see his doctor, F. J. Stanze, at 11 o'clock, and at 1 p. m. went to Granite City to get the car. He got the car; executed a mortgage on it; had the car serviced before he took it; executed notes for the purchase money and introduced in evidence the first note which he had paid, the mortgage executed that day, and the service slip, also the call sheet of the hotel for that day. He came back to St. Louis with the car and had his hair cut and a shave by Richard A. Justus, and while he was in the barber shop his brother Pascal came in and he told him about getting the new car. He said that he registered under the name of E. S. Lang because some young men, whom he knew well, sometimes would come in and wake him up and disturb him after he went to his room; that he did not want to be disturbed.

Pascal Farina testified that he was registered daily at the Woodbine Hotel Annex from March 29th to April 8th, and introduced the register sheets of the hotel showing this. On the evening of April 2d, Frank W. Tomasso proposed to sell him a truck, and he made an appointment with Tomasso to meet him at his room at the hotel the next morning at 10 o'clock. They met at his room, No. 314, on April 3d, and talked until 11 o'clock. Tomasso wanted a thousand dollars more for the truck than he was willing to pay. After this he got some coffee and went to his place of business. At 12:30 he went to the Leary Cleaning Company, took off his suit, had it pressed, and

waited for it. He then went to the Intercity Express Company and while there made a deposit for Raymond Hookey of $124.21. He then went up town and met Richard Delias and spoke to him as they passed. He knew Delias well; he had nothing to do and went in the barber shop of Richard Justus about 4:30. He found his brother Paul there getting shaved. He told him that he had bought a new car, gave him the keys and he got in the car and rode around in it. About 6 p. m. he met Tom Duffy and wife on the street. He knew Duffy well and spoke to him. He then went to a pool room and met there John Hubert, then went to the theater, and then went to the hotel to bed.

Paul Farina sustained his testimony by the testimony of Frank Berger, Raymond Fernandezes, Leo Fehr, Bill Bronstein, Peter Radcliffe, Dr. Frank J. Stanzes, and Richard A. Justus, who testified to the facts stated by him as to his being in St. Louis on April 3rd.

Pascal Farina sustained his testimony by the testimony of Frank Heins, Richard T. Elias, Thomas M. Duffy, Richard A. Justus, Frank Tomasso, Raymond Hookey, and Harry Cohn, all of whom testified to seeing him in St. Louis and having transactions with him on April 3 as stated by him. These witnesses also testified to the execution on that day of the papers above referred to, which were read to the jury.

Two grounds for reversal are chiefly relied on: (1) There was misconduct on the part of the commonwealth attorney. (2) The verdict is against the evidence.

1. In the statement of the case to the jury, the commonwealth's attorney, after he had stated fairly the facts he expected to prove by the witnesses, said this:

"We will also show that the defendants are associates of Lawrence Daugherty, admittedly guilty in this case, and we will also show that their character is very bad in St. Louis.

"Mr. Overstreet: Objected to. (The court sustained said objection.)

"Court: Gentlemen of the jury, you will not consider that last statement of the commonwealth attorney; the character of the defendants is not in issue.

"Mr. Lawton: It may be in issue.

"Court: It may be, if the defendants care to put it in issue, but they may not care to put their

character in issue, and you must not allow that statement to influence your mind in any way in this trial; dismiss from your mind the statement that the defendants' character is bad.''

After the defendants testified on the trial, the commonwealth proved by a number of witnesses that defendants knew Lawrence and Chester Daugherty and were men of bad character, both for morality and for truthfulness. The court properly admonished the jury that the evidence as to their character was only competent in so far as it bore on the truthfulness of their testimony, and was not to be considered for any other purpose. The fact that they were men of bad character was competent for the purpose indicated by the court, and, being properly admitted for this purpose, the defendants were not prejudiced by the statement of the commonwealth's attorney in the opening of the case.

After the defendants had testified, Clarence Wolpert was recalled for further cross-examination by the defendants. He was then asked by the defendants if he was under indictment at that time in the federal court; how many times his place had been raided by prohibition officers; how many times he had been arrested by prohibition officers. The court sustained the objection of the commonwealth's attorney to all these questions, then this occurred:

"By Mr. Lawton: Now, I will consent that you may ask him the question that you asked about whether or not he has ever been arrested, how many times, and whether or not he has been indicted, if you will permit me to ask the Farinas how many times they have been indicted and arrested in St. Louis.

"By Mr. Overstreet: I want to object to that statement, except, and I want to make a motion that the jury be discharged. I am objecting to the statement of the commonwealth's attorney and I want the court, of course, to pass on it. (The court sustained said objection.)

"By Mr. Overstreet: I now move that the jury be discharged. (The court overruled said objection for the present, to which ruling of the court the defendants, by counsel, at the time excepted.)

"By the Court: Gentlemen of the jury, you will not, of course, for any purpose, consider the question or observation made by the attorney for the commonwealth or the attorney for the defendants, that he would agree that he might ask certain questions if he be permitted to ask the Farinas certain questions. That has nothing to do with the case. The law says you must not consider that. You must not consider that or let it weigh in your mind for any purpose."

This court cannot assume that the jury disregarded the direction of the trial court. The defendants' attorney persisted in questions, which he knew to be incompetent, for the purpose of getting an impression upon the minds of the jury. The commonwealth's attorney should not have said what he did in the presence of the jury, but it could not have had any substantial effect upon the trial, in view of the uncontradicted evidence of the bad character of the defendants by persons who knew their character in St. Louis.

Under section 340 of the Criminal Code a judgment of conviction may not be reversed for any error in the record, unless upon consideration of the whole case the court is satisfied that the substantial rights of the defendants have been prejudiced thereby. The trial of this case occupied 4 or 5 days. The facts were all fully presented to the jury, and clearly the verdict of the jury should not now be disturbed for the matters above indicated. Cox v. Commonwealth, 209 Ky. 787, 273 S. W. 515; Dalton v. Commonwealth, 216 Ky. 317, 287 S. W. 898.

2. On the former appeal of this case when the evidence was practically the same as on the last trial, the court held that the evidence was sufficient to take the case to the jury. It is earnestly insisted now that the verdict should not stand, because the proof that the defendants were in St. Louis on April 3d, should be believed rather than the testimony of the witnesses of the commonwealth that they were in Louisville on that day. The credibility of the witnesses is for the jury. The jury sees and hears the witness. What is going on in his mind is sometimes better shown by the expression of his face than by what comes out of his mouth. The Constitution guar-

antees a jury trial in cases of this sort, and, while this court may set aside the verdict if it is palpably against the evidence, the court has steadily declined to interfere with verdicts in cases of this sort, unless palpably against the evidence.

It was a question here whether the proof of the defendants being in St. Louis on April 3d should be believed. The witnesses in some cases went into a greater detail of facts than a man usually remembers. Other witnesses did not show very definite means of fixing the date. The day when a man meets another on the street or in a barber shop, unless fixed in some way, may not be accurately remembered. Bad men may coach witnesses or concoct papers or change dates. The jury was the tribunal to determine whether these witnesses had been coached or how far their testimony was to be credited. Under all the facts and in view of this being the third trial of the case, the court is unwilling to disturb the verdict. Two juries found the defendants guilty, and while one jury disagreed, only one man may hang a jury.

The other matters complained of in the brief will be briefly disposed of. When John Miles testified for the commonwealth, Lawrence Daugherty was not in court. After the defendants introduced Lawrence Daugherty as their witness and he testified that the defendants were not with him in Louisville and that he was never at Irvington, the court properly allowed John Miles to be recalled by the commonwealth in rebuttal and to identify the man who testified as the man he had seen at Irvington.

The questions asked the hotel clerk as to the facts shown by the register, which he introduced, were not prejudicial, for these facts, being shown by the record, could be considered by the jury if the witness had not been asked about them at all.

The commonwealth's attorney, in arguing to the jury that the witnesses for the defendants had been coached, was simply presenting his side of the case, and what he said was not unwarranted by the evidence.

Judgment affirmed.